Jackie HUGHES, Appellant,

v.

UNITED STATES, Appellee.

No. 81–317.

District of Columbia Court of Appeals.

Argued March 25, 1981.

Decided March 30, 1981.

William J. Mertens, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Washington, D. C., and Allie J. Sheffield, Public Defender Service, were on the pleadings, for appellant.

William J. Birney, Asst. U. S. Atty, Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. and John A. Terry, Michael W. Farrell, and Alan D. Strasser, Asst. U. S. Attys., Washington, D. C., were on the pleadings, for appellee.

Before KELLY, HARRIS and MACK, Associate Judges.

HARRIS, Associate Judge:

In the interest of expedition, we keep our treatment of this case abbreviated. It had its genesis in the armed robbery and murder of Richard G. Edwards. Mr. Edwards was the manager of a restaurant in Bethesda, Maryland. On March 2, 1981, he was taking money to a banking institution across Wisconsin Avenue from the restaurant. He was set upon by a black male, who shot him and took the money. Mr. Edwards was licensed to carry a .25 caliber pistol. He fired five shots at his assailant; a trail of blood along the fleeing robber's path of escape reflected that the assailant had been shot.

Approximately one-half hour later, appellant Hughes was admitted to the Veterans Hospital in the District of Columbia by a man who then fled. He had been shot five times. He gave inconsistent statements as to how he had been shot. Intensive investigation led the authorities to believe that appellant was likely to have been Mr. Edwards' assailant. Appellant, who had undergone extensive surgery, was arrested. An extradition hearing to accomplish his return to Maryland for prosecution has been scheduled for April 8, 1981.

In the meantime, it became apparent that three objects, believed to be small caliber bullets, were lodged just under the skin of appellant's right side and right hip. He first agreed to their removal, but, upon learning that they would be turned over to the police, he promptly changed his mind. The United States Attorney's office in the District of Columbia then filed an application for a search warrant to compel the removal of the three objects. That application was supported by a meticulously thorough 16–page affidavit which had been prepared by the Montgomery County Department of Police. Based thereon, Judge Hess found probable cause to believe that appellant had committed a felony and that the presumed bullets located just under appel-

lant's skin had been fired from the gun of Mr. Edwards. Hence, the production of the bullets for ballistics testing is of great evidentiary importance, since it does not appear that any eyewitness to the incident reliably could identify Mr. Edwards' murderer.

An adversary hearing was conducted on March 16, 1981. Appellant was present. He was represented by a Public Defender Service attorney who had been appointed in this jurisdiction; also present was another attorney who had been retained to represent appellant in Maryland.

There were two witnesses in the hearing. The first was Montgomery County Detective Bernard J. Forsythe, who adopted his previously prepared affidavit in support of the search warrant. He also gave brief additional testimony. Cross-examination of him was requested by defense counsel and denied by the court, it being concluded that appellant was not entitled to cross-examination on the purely legal determination of probable cause.[1] The second witness was Dr. David Griffiths Berry, the Chief Resident in General Surgery of the Georgetown Surgical Service at D. C. General Hospital. He testified essentially that the objects believed to be bullets readily and safely could be removed from under appellant's skin.[2] Full cross-examination of Dr. Berry was permitted. After hearing arguments from counsel, the court stated in part:

> The uncontradicted testimony and the court so finds that these objects are very close to the surface of the skin, that they are in the fatty tissues and that they can be removed by using a minor surgical procedure and the risks inherent in such a surgical procedure are extremely nil. The Court is satisfied that due to the location of these metallic objects · which the evidence indicates are bullets, that the type of surgical procedure contem-

plated constitutes a very minor intrusion of the defendant.

\*    \*    \*    \*    \*    \*

[O]n balance the court is satisfied that this intrusion is so minor that there is nothing in the Constitution, nor is there any statutory law which would preclude the Government from going forward with the type of operation which is contemplated.

The court accordingly granted the application for a search warrant, and issued the following order:

> Upon consideration of the motion of the United States Attorney for the District of Columbia, and the opposition thereto by Mr. Hughes, and the evidence adduced in the hearing on March 16, 1981, it is hereby
>
> ORDERED, that the motion of the United States Attorney be and hereby is, GRANTED; and it is
>
> FURTHER ORDERED:
>
> 1. That the Superintendent of the District of Columbia General Hospital, or his authorized representative or representatives, shall remove from Jackie Hughes the following foreign objects disclosed by X-ray and believed to be bullets:
>
> > one foreign object from under his right arm; two foreign objects from his right hip;
>
> 2. That such removal is to be done at the District of Columbia General Hospital with accepted medical procedures, with due regard given to the health and preservation of the life of Jackie Hughes;
>
> 3. That, if at any time during the course of the removal procedures, danger to the life of Jackie Hughes develops, such removal procedures shall cease and such other steps shall be taken as may be necessary to protect the health and life of Jackie Hughes;

---

1. The court stated:

    The four corners of the affidavit, plus the Officer's testimony, establishes probable cause or it doesn't. I see no authority for cross-examination on this issue.

2. The doctor testified that the presumed bullets could be removed under local anesthesia, and that each requisite incision would necessitate but one or two sutures. If such a procedure were to be performed in a normal office-type situation, the patient would be released to go home about 15 minutes after the bullets had been extracted. Greater care, however, would be taken with appellant, as a precaution against possible infection.

4. That, after the removal of the foreign objects, the objects shall be turned over to an authorized representative of the Metropolitan Police Department, who shall make a return to the Court in accordance with Rule 41 of the Rules of the Superior Court-Criminal.

5. Mr. Hughes shall not tamper with, destroy, disturb, or dispose of the foreign objects in his body, nor cause anyone else to tamper with, destroy, disturb, or dispose of the foreign objects, except by Order of this Court.

Appellant has filed a written Motion for Summary Reversal of the trial court's order. That motion has been opposed by the government which at oral argument moved for summary affirmance.

Considering all of the circumstances of this case, we find no legal impediment—constitutional or otherwise—to the trial court's order. The trial judge's factual finding that the removal of the presumed bullets from under appellant's skin would be a minor surgical procedure involving virtually no risk is not only supported by the evidence, *see* D.C.Code 1973, § 17–305(a), but also no evidence to the contrary has been proffered by appellant. Turning to our search warrant statute, D.C.Code 1973, § 23–521, provides in pertinent part:

(a) [A] judicial officer may issue a search warrant upon application of a law enforcement officer or prosecutor. A warrant may authorize a search to be conducted anywhere in the District of Columbia and may be executed pursuant to its terms.

(b) A search warrant may direct a search of any or all of the following:

\* \* \* \* \* \*

(4) designated persons.

(c) A search warrant may direct the seizure of designated property or kinds of property, ...

(d) Property is subject to seizure pursuant to a search warrant if there is probable cause to believe that it—

\* \* \* \* \* \*

(4) constitutes evidence of or tends to demonstrate the commission of an offense or the identity of a person participating in the commission of an offense.

Manifestly the statute is broad enough to encompass the ruling of the trial court, and we sustain the adoption of the March 16 order. *See United States v. Crowder*, 177 U.S.App.D.C. 165, 543 F.2d 312 (1976) (en banc), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *accord, Creamer v. State*, 229 Ga. 511, 192 S.E.2d 350 (1972), *cert. dismissed*, 410 U.S. 975, 93 S.Ct. 1454, 35 L.Ed.2d 709 (1973). Accordingly, appellant's motion for summary reversal is denied, the government's motion for summary affirmance is granted, and the case is remanded to permit the implementation of the trial court's order of March 16, 1981.

*So ordered.*

MACK, Associate Judge, dissenting:

I question whether the District of Columbia statute, quoted by the majority, empowers a trial judge to order the seizure, from a "designated person," of property other than that found "upon" the person.[1] *See* D.C. Code 1973, § 23–522(b). I question whether appellant has had an "adversary hearing" in a real sense, where the trial court, over the objection of defense counsel that there had been insufficient time to prepare or secure medical testimony on behalf of appellant, found "probable cause" on Friday, denied a

---

1. While the three metallic objects in appellant's body were described as being so close to the skin that they could be felt, the objects could not be seen except through x-ray. They were described as being in subcutaneous fat—no more than a centimeter or two below the skin. Therefore, the degree of the intrusion required to recover the objects is a quantum leap from the intrusions approved by the Supreme Court. *See Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973) (sample of scrapings from fingernails); *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973) (handwriting exemplars); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973) (voice exemplars); *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (blood test). *Cf. Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), condemning forced stomach pumping.

continuance, scheduled a hearing for the following Monday morning and ordered that the operation be performed on Wednesday morning.[2] I question the necessity for the haste by this jurisdiction in executing a search warrant of such an unusual nature, on behalf of the State of Maryland, when extradition proceedings are scheduled to be heard in less than two weeks.[3]

These matters I question, but my disagreement with the majority is based upon a firm conviction: in my view, the surgical exploration and extraction of any object, for evidentiary purposes, from the body of a nonconsenting suspect, is *per se* an unreasonable search and seizure under the Fourth Amendment. *See* Judge Robinson's dissenting opinion in *United States v. Crowder*, 177 U.S.App.D.C. 165, 171, 543 F.2d 312, 318 (1976) (en banc). *See also Adams v. State*, 260 Ind. 663, 666, 299 N.E.2d 834, 837 (1973).

2. The trial court denied a stay, characterizing any appeal as "frivolous." This court granted a temporary stay on Tuesday evening.

3. In its application for the search warrant, government counsel represented that there was a possibility of the bullets deteriorating. On oral argument in this court, government counsel expressed the fear that appellant might remove the bullets himself, citing precedent. At the time of the hearings in the trial court and at the time of oral argument in this court, appellant was being held under close supervision in the D.C. jail infirmary as a result of surgery extending from his breastbone to his pubic area.