TOM LOFTUS, Chairman Assembly Organization Committee
You ask on behalf of the Committee on Assembly Organization whether the city of West Allis may lawfully require pre-employment drug testing of all prospective civil service employes. It is my opinion it is unlikely that an employer could justify testing of every prospective employe, but that each position must be separately analyzed using the relevant constitutional factors.
The fourth amendment to the United States Constitution and article 1, section 11, of the Wisconsin Constitution protect people against unreasonable searches and seizures. The basic purpose of the amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." Camara v. Municipal Court, 387 U.S. 523,528 (1967). The test of reasonableness is not capable of precise definition or mechanical application, but requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails. Bell v. Wolfish,441 U.S. 520, 529 (1979).
The courts have considered the involuntary taking and analysis of urine by governmental employers to be a search and seizure within the meaning of the fourth amendment. National TreasuryEmployees Union v. Von Raab, 816 F.2d 170, 176 (5th Cir. 1987);McDonell v. Hunter, 809 F.2d 1302, 1307 (8th Cir. 1987);Shoemaker v. Handel, 795 F.2d 1136, 1141 (3rd Cir. 1986); Capuav. City of Plainfield, 643 F.2d 1507, 1513 (D. N.J. 1986);Lovvorn v. City of Chattanooga, 647 F. Supp. 875, 879 (D. Tenn. 1986); American Federation of Government Employees, AFL-CIO v.Weinberger, 651 F. Supp. 726, 732 (S.D. Ga. 1986); Patchogue-MedfordCongress of Teachers v. Board of Education, 111 A.D. 35,505 N.Y.S.2d 888 (N.Y.App. 2d Div. 1986), 1 IER Cases 1315affirmed, ___ N.Y.2d ___, No. 156 (June 9, 1987); City of PalmBay v. Bauman, 475 So.2d 1322 (Fla.App. 5 Dist. 1985). *Page 258 
The supreme court has established a two-part test to determine whether a reasonable expectation of privacy exists.
 The first [question] is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy" — whether in the words of the Katz [v. United States, 389 U.S. 347, 351 (1967)] majority, the individual has shown that "he seeks to preserve [something] as private." The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as `reasonable,'" — whether in the words of the Katz
majority, the individual's expectation, viewed objectively, is "justifiable" under the circumstances.
Smith v. Maryland, 442 U.S. 735, 740-41 (1979) (citations omitted).
Drug testing by urinalysis involves two steps, collection of the sample and disposition and analysis of the sample. Under most testing schemes, the subject is required to urinate under the close supervision of a government representative, to reduce the possibility of sample substitution or alteration. Capua, 643 F. SUPP. at 1511; National Treasury Employees Union v. Von Raab, 649 F. SUPP. 380, 382 (D. La. 1986). Those procedures have been determined to be highly intrusive. Indirect observation has been held to be less intrusive, but still intrusive enough to be an invasion of the subject's expectation of privacy. AmericanFederation of Government Employes, 651 F. SUPP. at 732. However, at least three courts have hinted that the intrusion of urinalysis is minimal. Turner v. Fraternal Order of Police,500 A.2d 1005, 1009, 1010 (D.C.App. 1985); National TreasuryEmployees Union v. Von Raab, 808 F.2d 1057, 1061 (5th Cir. 1987);Mack v. U.S., FBI, 653 F. SUPP. 70, 74-75 (S.D.N.Y. 1986).
The courts are similarly divided as to the reasonableness of any subjective expectation of privacy which may exist. Most courts have held that a person has a reasonable and legitimate expectation of privacy in the personal information contained in bodily fluids. Schmerber v. California, 384 U.S. 757, 769-70
(1966); Capua, 643 F. Supp. at 1513; McDonell v. Hunter, 612 F. SUPP. 1122, 1127 (S.D. Iowa 1985); Storms v. Coughlin, 600 F. SUPP. 1214, 1218 (S.D. N.Y. 1984). Some courts have held that employes in certain occupations have a diminished expectation of privacy because of the public safety aspects of their jobs,Lovvorn, 647 F. SUPP. at 880; Allen v. City of Marietta, 601 F. SUPP. 482, 491 (N.D. Ga. 1985), *Page 259 
because of the highly regulated nature of their employment,Shoemaker, 795 F.2d at 1142, or because of their law enforcement characteristics, Mack, 653 F. Supp. at 75; Turner,500 A.2d at 1008. Some writers have even suggested that there is no reasonable expectation of privacy in a body waste product which must necessarily be eliminated. Turner, 500 A.2d at 1011; Mack,653 F. Supp. at 75.
The courts all seem to recognize that a governmental employer has a legitimate interest in hiring employes who are free from the influence of drugs which may adversely affect the government's ability to discharge its statutory responsibilities.Allen, 601 F. Supp. at 491; Division 241 Amalgamated TransitUnion (AFL-CIO) v. Suscy, 538 F.2d 1264, 1267 (7th Cir. 1976). The strength of that interest increases as the risk of public danger or injury increases, compare Patchogue, 505 N.Y.S.2d at 891, 1 IER Cases at 1317, with Allen, 601 F. Supp. at 491, or as the risk of conflict of interest increases, McDonell,809 F.2d at 1308; National Treasury Employees Union, 808 F.2d at 1062.
The broad range of weights assigned by the courts to the subjective expectations of privacy in urination, the reasonableness of an asserted privacy interest in a body waste, and the strength of the government's legitimate interest in a drug-free work place make it impossible to give a single answer to your question. The strengths of each factor will vary with each job category, each degree of collection surveillance, and whatever conclusion is made about the reasonableness of a privacy interest in the body waste product. The leading case on the subject suggests nine factors which must be weighed and balanced.National Treasury Employes Union, 816 F.2d at 177-80.
The courts have generally held that a current employe may be subject to urinalysis only if the employer has a reasonable, individualized suspicion that the employe was using illegal drugs. Lovvorn, 647 F. Supp. at 881, and cases cited. At least two courts, however, have permitted random testing of employes without reasonable suspicion. McDonell, 809 F.2d at 1308 (prison guards); Shoemaker, 795 F.2d at 1143 (jockeys).
Pre-employment testing raises somewhat different issues than testing of current employes. Nonconsensual testing of current employes, without reasonable suspicion of drug use, has been held to impermissibly create an additional condition of employment. *Page 260 Capua, 643 F. Supp. at 1519; American Federation of GovernmentEmployees, 651 F. Supp. at 736; National Treasury EmployeesUnion, 649 F. Supp. at 387-88. The courts tend to view purported consents to such testing as coerced, since employes were given only the option of consenting to the test or being terminated.Capua, 643 F. Supp. at 1521; Palm Bay, 475 So.2d at 1324-25.
It is substantially easier to prove voluntary consent in pre-employment testing. The prospective employe is put on notice from the beginning that drug-free status at the time of hire is a condition of employment. Those who object to such testing need not apply for government employment. Clearly, a government employer has a right to establish that its prospective employes are physically and mentally able to perform their assigned duties. The courts which have considered this issue have tended to permit pre-employment drug testing for dangerous or sensitive jobs. National Treasury Employees Union, 816 F.2d at 180; McLeodv. City of Detroit, 39 FEP Cases 225 (E.D. Mich. 1985). Indictum, other courts have stated that pre-employment drug screening does not implicate the fourth amendment. McDonell,612 F. Supp. at 1130 n. 6; Lovvorn, 647 F. Supp. at 881 n. 7; Turner,500 A.2d at 1011.
The government has interests in regulating the conduct of its employes that differ significantly from those it possesses in connection with regulation of the conduct of the citizenry in general. Kelley v. Johnson, 425 U.S. 238, 245 (1976). Liberty interests are subject to greater restrictions thanfirst amendment interests, ibid, but the courts have expanded on the precise holding of Pickering v. Board of Education, 391 U.S. 563,568 (1968), to declare that public employment may not be conditioned on waiver of a constitutional right. McDonell,612 F. Supp. at 1131; American Federation of Government Employes,651 F. Supp at 736.
It is my opinion that a pre-employment drug testing program most likely would be upheld by the courts in situations where public safety and security create a strong governmental interest in the integrity of an employe's character and physical and mental faculties, and where the circumstances of collection are least intrusive. In practice, public employment involves positions which vary greatly in terms of responsibility, danger, and opportunities for conflict of interest, in which the government's interest in a drug-free employe varies accordingly, and testing programs involve collection circumstances which vary in intrusiveness. For each of these positions, *Page 261 
the city of West Allis will have to perform a case-by-case analysis of the fourth amendment factors to determine whether pre-employment testing is reasonable.
In addition, I would advise any municipality undertaking such testing to adopt a resolution setting forth findings that the job classifications subject to testing give rise to a strong governmental interest in the integrity of an employe's character and physical and mental faculties such that pre-employment testing is desirable and in the public interest. Such a finding would be helpful should such testing be challenged in court.
Aside from these guidelines, the uncertainty of the law does not permit an unequivocal answer to your question. The city may take some comfort in knowing that a good faith attempt to comply with an unsettled constitutional standard may protect it from damages if it errs. Harlow v. Fitzgerald, 457 U.S. 800, 818-19
(1982).
The legal issues surrounding pre-employment drug testing do not end with a constitutional analysis of the reasonableness of the initial search. The results of urinalysis must be recorded and communicated in some form which will ultimately identify the prospective employe. The testing process should not disseminate identifiable results further than justified by the government's interest in a drug-free workforce. The testing process should be conducted in a manner which reduces the risk of rejection based on false-positive test results. The precise design of these safeguards, however, is beyond the scope of your request.
DJH:BAO *Page 262