Lance **WRIGHTSELL, Lovell Williams, Edward Evans, Curtis Moore, Andrew Brown, and Forest Johnson, individually and on behalf of all others who are similarly situated, Plaintiffs,**

v.

The **CITY OF CHICAGO, a municipal corporation, and LeRoy Martin, in his official capacity as the Superintendent of Police, Defendants.**

No. 87 C 3532.

United States District Court, N.D. Illinois, E.D.

Jan. 21, 1988.

Edward F. Little, Law Offices of Edward F. Little, Milwaukee, Wis., Burnell Dixon, Chicago, Ill., Walter S. Clifton, Urbana, Ill., for plaintiffs.

Douglas McMillan, Asst. Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

This is an action brought by plaintiffs pursuant to 42 U.S.C. § 1983, against the City of Chicago and its police superintendent, currently LeRoy Martin, in his official capacity, complaining of drug testing. The six named plaintiffs are current or former Chicago police officers. Their motion for certification as a class action is pending. Plaintiffs seek a declaratory judgment that Police Department General Order 85–5, which concerns mandatory physical examinations including urine screening for the presence of drugs, is unconstitutional on its face and as applied to plaintiffs. They also seek an injunction against random drug testing of police officers and against performing such tests on less than reasonable suspicion. Defendants moved to dismiss the First Amended Complaint for failure to state a cause of action. Since the motion was filed and briefed, the complaint has been amended twice. Although some of the grounds contained in the motion to dismiss have been eliminated by the amendments, defendants' principal argument remains to be resolved. The court therefore considers whether the Third Amended Complaint states a claim upon which relief can be granted. In deciding the motion, all well-pleaded factual allegations are accepted as true and the motion can only be granted if plaintiffs can prove no set of facts entitling them to relief. *Vickers v. Henry County Savings & Loan Ass'n,* 827 F.2d 228, 232 (7th Cir.1987).

General Order 85–5 provides that use of illegal drugs, which include marijuana, is strictly prohibited and will result in disciplinary action. Rules regarding disciplinary penalties and procedures apparently appear elsewhere and are not alleged in the complaint. The General Order also lists situa-

tions in which a mandatory physical examination will be required. The conditions for requiring a physical examination, which will include drug testing through urinalysis, are set forth in the margin.[1] The General Order does not provide for random drug testing.

The alleged facts are as follows:

Lance Wrightsell was on medical leave. He was willing to submit to a physical examination, but not to a urine drug test, unless defendants "were able to articulate a reason for requiring him to do so." A "reasonable basis to believe" he was a drug user was apparently the only reason that would have been acceptable to Wrightsell. Because he refused to submit to the drug test, Wrightsell was suspended indefinitely.

Based on information from several known drug dealers that Lovell Williams associated with them, Lovell Williams was directed to submit to a drug test. Cocaine was found in his urine and he was indefinitely suspended.

Edward Evans was ordered to submit to a "random urinalysis" which indicated the presence of marijuana. He was suspended from duty.

Curtis Moore's former girlfriend informed defendants she wanted to "get even" with Moore and therefore told them he was a drug user. A four-month surveillance of Moore did not reveal drug use and he was eventually requested to submit to urinalysis but refused. The girlfriend dropped her complaint and an investigation could not sustain her allegation. Moore was terminated for refusing to submit to urinalysis.

Andrew Brown was on medical leave of absence after an automobile accident. Urinalysis was ordered and Brown tested positive for marijuana. Brown was indefinitely suspended. Ten months later he was reinstated but soon thereafter tested positive for cocaine. He was again indefinitely suspended.

Following a vacation, Forest Johnson was ordered to submit to urinalysis. He tested positive for marijuana and was suspended indefinitely. The Chicago Police Board, however, "exonerated" him "of all drug charges" and found the urinalysis given to him was conducted under negligent circumstances that made the results suspect and unreliable. The complaint does not specify whether he was reinstated.

Plaintiffs assert these actions to be "a deprivation of liberty without due process of law contrary to the Fourth and Fourteenth Amendments to the Constitution."

Although there is some indication in the complaint that plaintiffs believe the testing

---

1. IV. MANDATORY PHYSICAL EXAMINATIONS
 A. Mandatory physical examinations will be conducted at the Medical Services Section when, in the opinion of the Medical Director:
 1. an examination of any member is required to identify the cause of an illness or incapacitation.
 2. a unit commanding officer/watch commander has furnished written documentation citing specific instances when a member was incapable of performing his required duties or exhibited unusual work habits and/or behavorial traits.
 3. a pattern of Medical Roll use indicates that the member may not be physically fit to perform his required duties.
 B. A mandatory physical examination, the scope of which will be determined by the Medical Director, will be conducted when a member:
 1. is scheduled to submit to a Department ordered psychiatric examination.

2. is appointed to an exempt position, subject to promotion to a career service rank, or is applying for assignment to certain specialized Department units (when notice has been given that a physical examination is required).
3. qualifies for an extra-Department training program of more than a week in duration which has been approved by the Academic Selection Board.
4. is returning to the Department after an absence of 30 days or more:
 a. from a leave of absence or suspension.
 b. pursuant to an order of court or an order of the Police Board.
 c. to be re-employed.
NOTE: Mandatory physical examinations will include the submission of a urine specimen and blood sample for routine analysis and screening for the presence of drugs.
5. or specific groups of members (as determined by age, years of service or functional specialty) are scheduled.

procedure is unreliable,[2] their conclusory allegation does not adequately allege a deficient testing procedure. Therefore, the court does not consider the possibility that the drug testing is unconstitutional because of the unreliability of the testing. *Compare National Treasury Employees Union v. Von Raab*, 816 F.2d 170, 181–82 (5th Cir.1987); *Taylor v. O'Grady*, 669 F.Supp. 1422, 1430 (N.D.Ill.1987); *Jones v. McKenzie*, 628 F.Supp. 1500, 1506–07 (D.D. C.1986), *rvs'd in part on other grounds*, 833 F.2d 335 (D.C.Cir.1987); M. Rothstein, *Drug Testing in the Workplace: The Challenge to Employment Relations and Employment Law*, 63 Chi.-Kent L.Rev. 683, 733 (1987). There is also no allegation that the testing is performed in an exceptionally intrusive manner. *Compare Von Raab*, 816 F.2d at 177; *Capua v. City of Plainfield*, 643 F.Supp. 1507, 1514 (D.N.J. 1986); Rothstein, *supra* at 733–34. Additionally, there are no allegations that plaintiffs did not have available to them a constitutionally sufficient means of challenging their suspensions. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The question before the court is whether, as a matter of law, urinalysis drug testing of police officers violates the Fourth Amendment.[3] *Compare Division 241, Amalgamated Transit Union v. Suscy*, 538 F.2d 1264 (7th Cir.) (per curiam), *cert. denied*, 429 U.S. 1029, 97 S.Ct. 653, 50 L.Ed.2d 632 (1976).

■ Although a recent Seventh Circuit opinion expresses reservations as to urinalysis being a search, *see United States v. Williams*, 787 F.2d 1182, 1185 (7th Cir. 1986), there is overwhelming precedent that it is a search. *Id.* at 1185 n. 5; *Jones v. McKenzie*, 833 F.2d 335, 338 (D.C.Cir. 1987); *National Federation of Federal Employees v. Weinberger*, 818 F.2d 935, 942 (D.C.Cir.1987); *Taylor*, 669 F.Supp. at 1434–35; *Smith v. White*, 666 F.Supp. 1085, 1089 (E.D.Tenn.1987); *Feliciano v. City of Cleveland*, 661 F.Supp. 578, 583–86 (N.D.Ohio 1987); P. Joseph, *Fourth Amendment Implications of Public Sector Work Place Drug Testing*, 11 Nova L.J. 605, 616–28 (1987). Defendants seek to dismiss the claims of Wrightsell and Moore on the ground that they were never searched since they refused to submit to urinalysis. The one case supporting this view cites no authority for this holding and the holding was not upheld on review. *See Everett v. Napper*, 632 F.Supp. 1481, 1484 (N.D.Ga.1986), *aff'd in part, rvs'd in part*, 833 F.2d 1507 (11th Cir.1987). Although affirming the dismissal of the Fourth Amendment claim, the Eleventh Circuit rejected the reasoning of the district court and held there was a search that the plaintiff could challenge. 833 F.2d at 1511. *See also McDonell v. Hunter*, 809 F.2d 1302, 1304, 1307 (8th Cir.1987); *Berry v. District of Columbia*, 833 F.2d 1031, 1032, 1034 n. 14 (D.C.Cir.1987); *Smith*, 666 F.Supp. at 1088, 1089 (plaintiff Sands). This court agrees with the Eleventh Circuit in *Everett* and holds that a public employee can challenge his termination on Fourth Amendment grounds when he is terminated for refusing to submit to the search. *Cf. Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967) (Fourth Amendment defense to conviction for refusing to permit warrantless search); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967) (same).

Plaintiffs in this case can be divided into four categories. Williams and Moore were tested based on suspicion of drug use. Wrightsell and Brown were tested follow-

---

**2.** It is assumed that paragraph 39(b) of the Third Amended Complaint was supposed to read "... the testing procedure is [*not*] performed under reliable circumstances...."

**3.** Defendants also argue plaintiffs have not sufficiently alleged grounds for official liability. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1297–1300, 89 L.Ed.2d 452 (1986). General Order 85-5, however, must be viewed as official policy. The Order, though, does not appear to allow random testing and it is only alleged that one person was randomly tested. One instance, however, can constitute official policy if it was a decision of a policymaker. Since it is alleged that defendants ordered the random testing, and the police superintendent is a policymaker, there is a sufficient allegation of official liability regarding random testing.

ing medical leave. Johnson was tested after a nonmedical leave. Evans was randomly tested. On the facts alleged, the drug tests of Wrightsell, Brown, and Johnson, which were part of routine medical examinations, are reasonable. Their claims are dismissed. Whether the searches of the other plaintiffs were reasonable or unreasonable, however, requires further factual development. The claims of Williams, Moore, and Evans cannot be dismissed on defendants' present motion.

 The Supreme Court has not yet considered the question of drug testing of public employees. It has, however, recently considered the question of the administrative search of a public employee's work area. *See O'Connor v. Ortega,* — U.S. ——, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). This case is most instructive.[4] *See Feliciano,* 661 F.Supp. at 583. The Fourth Amendment applies even if the search is solely for administrative purposes and not a criminal investigation. *O'Connor,* 107 S.Ct. at 1497.

> A determination of the standard of reasonableness applicable to a particular class of searches requires 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' In the case of searches conducted by a public employer, we must balance the invasion of the employees' legitimate expectations of privacy against the government's need for supervision, control and the efficient operation of the workplace.

*Id.* at 1499 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). Workplace searches of public employees, at least for noncriminal investigations, do not require probable cause. *Id.* at 1500–02. Since there was "individualized suspicion" in *O'Connor,* the court found it unnecessary to determine if a workplace search based on less than indi-

vidualized suspicion would be permissible. *Id.* at 1503. The determination of the reasonableness of the search must be considered in light of all the circumstances and is a two-fold inquiry. There must be (a) reasonable grounds for conducting the search and (b) the scope of the search must be reasonably related to the circumstances justifying a search in the first place. *Id.* at 1502–03. Additionally, the determination of reasonableness must be determined on a case-by-case basis in light of the specific facts of the case. *Id.* at 1497, 1499. *See also id.* at 1506 & n. 2 (Blackmun, J., dissenting).

Apparently as a result of the President's anti-drug campaign and call for workplace drug testing, a large number of drug-testing cases have recently appeared. *See* Exec.Order No. 12,564, 55 U.S.L.W. 2177–78 (Sept. 30, 1986); *Von Raab,* 816 F.2d at 172; *Policemen's Benevolent Association of New Jersey, Local 318 v. Township of Washington,* 672 F.Supp. 779, 780 (D.N.J. 1987). The predominate result has been that drug testing based on a reasonable suspicion is permissible, but drug testing on less than reasonable suspicion is not unless there is a compelling government interest and adequate safeguards. *See id.* at 788; *Taylor,* 669 F.Supp. at 1439–40; *Von Raab,* 816 F.2d at 182. *See also Serpas v. Schmidt,* 827 F.2d 23, 30 (7th Cir. 1987). Virtually all of the cases involving police officers have found drug testing based on less than reasonable suspicion to be impermissible. *See Feliciano,* 661 F.Supp. at 590. *See also Policemen's Benevolent Association, supra.* It is true, though, that a number of appellate court cases have approved drug testing on less than reasonable suspicion. *See Von Raab,* 816 F.2d 170 (custom employees); *McDonell,* 809 F.2d 1302 (prison employees); *Shoemaker v. Handel,* 795 F.2d 1136 (3d Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986) (race horse jockeys). *But see Policemen's Benevolent Association,* 672 F.Supp. at 793–94 (distin-

---

**4.** Except where noted, further citations to *O'Connor* are to Justice O'Connor's plurality opinion. The holdings cited appear to command a majority of the court with Justice Scalia agreeing to some points in his concurrence and Justice Blackmun agreeing with some points in his dissent.

guishing these cases); *Feliciano*, 661 F.Supp. at 590–92 (same). The determination of the reasonableness of the searches has also hinged on drug tests being part of bona fide routine medical examinations. *See McKenzie*, 833 F.2d at 339–40; *Policemen's Benevolent Association*, 672 F.Supp. at 794–95; *Taylor*, 669 F.Supp. at 1440–41 & n. 5.

A drug-testing case cannot be decided merely by counting to see which position the majority of prior cases have taken. *Taylor*, 669 F.Supp. at 1440. The determination of the reasonableness of the search requires a balancing based on the facts, circumstances, and interests involved in the particular case. *O'Connor, supra. See, e.g., Von Raab, supra.* Complaints regarding the reasonableness of a urinalysis drug test ordinarily cannot be dismissed on a motion under Fed.R.Civ.P. 12(b)(6). *Berry*, 833 F.2d at 1034; *Weinberger*, 818 F.2d at 942; *Taylor*, 669 F.Supp. at 1424.

■ Under certain circumstances dismissal on a 12(b)(6) motion is proper. In *Suscy*, the Seventh Circuit affirmed the dismissal of a complaint making a facial challenge to a written policy of drug testing of bus drivers. 538 F.2d at 1267. In that case the court held that the facts alleged constituted probable cause for the tests. Dismissal was proper in that case because it was "certain" that the public interest in safety outweighed the individual interests in not being tested. *Id.* Although decided twelve years ago, *Suscy* appears to be consistent with *O'Connor* and the recent drug-testing cases and continues to be cited frequently. In light of *Suscy*, and consistent with the more recent cases, the court believes that it would be appropriate to dismiss on a Rule 12(b)(6) motion allegations of drug testing based on reasonable individualized suspicion and involving positions of public safety. *See also McKenzie*, 833 F.2d at 340; Rothstein, 63 Chi.–Kent

L.Rev. at 709–10. While the complaint is inadequate to determine the full scope of the government's interests [5] in the present case, the precedents leave little, if any, doubt, that drug testing for noncriminal purposes based on individualized suspicion of drug use by a police officer working for a department that prohibits drug use is permissible as long as the test is not more intrusive than the ordinary urinalysis test and the test is adequately reliable. There is no allegation in this case of exceptional intrusion nor inadequate reliability. Plaintiffs' claims should be dismissed if the allegations show reasonable individualized suspicion. Also, as is discussed below, drug testing of public safety employees as a part of routine medical tests is reasonable.

Reasonable suspicion is a lesser standard than probable cause. "There is reasonable suspicion when there is some articulable basis for suspecting that the employee is using illegal drugs. Put another way, there is reasonable suspicion when there is some quantum of individualized suspicion as opposed to an inarticulate hunch." *Smith*, 666 F.Supp. at 1089. Reasonable suspicion does not require actual observed behavior indicating job performance was affected by drug use and can be based on an informant's tip. *Id.* at 1089–90. The suspicion must be individualized; it cannot be directed toward an entire group. *Capua*, 643 F.Supp. at 1517. In *Smith*, it was found that there was a reasonable suspicion of drug use as to a number of employees. As for each of these employees, there was information that he or she (a) talked about or was observed using drugs, (b) was observed under the apparent influence of drugs, or (c) had previously expressed concerns about taking a drug test. 666 F.Supp. at 1087–88.

■ The complaint from Moore's girlfriend probably constituted grounds for reasonable suspicion of drug use by Moore.

---

5. Section III of General Order 85-5 states the policy behind the Order.

 III. POLICY

 A. It is imperative that all Department members have the physical stamina and psychological stability to properly perform all required duties.

 B. The use of illegal drugs, cannabis or nonprescribed controlled substances or the abuse of legally prescribed drugs or controlled substances by Department members is strictly prohibited. Violation of this policy will result in disciplinary action.

However, according to the allegations of the complaint which must be taken as true, investigation of the complaint turned up no evidence of drug use. At the point Moore was ordered to submit to urinalysis, it cannot be said that, as a matter of law, reasonable suspicion of drug use existed.

■ As for Williams, the complaint only states that he was known to associate with drug dealers. There is no allegation that he was known to have used drugs. Information that a police officer associates with drug dealers may constitute a reasonable suspicion that the officer sells drugs or is taking money from drug dealers, but it does not necessarily constitute a reasonable suspicion of drug use. Further development of the facts may show a reasonable suspicion of drug use by Williams, but such a conclusion cannot be reached merely on the facts alleged in the complaint.

■ Evans was randomly tested. Under the facts alleged, there was no reasonable suspicion of drug use by him.

Since it does not appear that there was a reasonable suspicion of drug use by Moore, Williams, and Evans, their claims cannot be dismissed on defendants' present motion. Further factual development is necessary.

The other three plaintiffs were tested for drugs as part of a regular medical examination required after return from 30 days or more of leave. Drug testing "as a part of a routine, reasonably required, employment-related medical examination" is permissible, even absent reasonable suspicion of drug use, "where there is a clear nexus between the test and the employer's legitimate safety concern." *McKenzie*, 833 F.2d at 336. There is no allegation in the complaint that medical examinations under § IV(B)(4) of General Order 85–5 are anything other than regular medical examinations. *See id.* at 339. *Compare Policemen's Benevolent Association*, 672 F.Supp. at 794–95 (annual medical examinations which include mandatory drug testing found not to be bona fide medical examinations, but instead a pretextual sham for drug testing).

In an unpublished decision, Judge Getzendanner dismissed a Fourth Amendment challenge to the Chicago Police Department's policy of performing drug tests as part of routine medical examinations upon return from various types of leave. *See Harris v. Washington*, No. 84 C 8812, slip op. at 6–8 (N.D.Ill. Feb. 6, 1985). At that time the policy was apparently unwritten, but it is very similar to the procedures contained in § IV(B)(4) of General Order 85–5. In distinguishing *Harris* from *Taylor*, Judge Getzendanner described the holding in *Harris* and reaffirmed the reasoning and analysis contained in *Harris*. *See Taylor*, 669 F.Supp. at 1440–41. The decision and analysis contained in *Harris* is consistent with *McKenzie*, 833 F.2d at 339–41. *McKenzie* upholds on a Fourth Amendment challenge, a policy of drug testing as part of routine physical examinations of District of Columbia Public School System bus attendants. *McKenzie* and *Harris* are authoritative in this case.

■ The City has as great an interest in the fitness of its police officers as it has in the fitness of its bus drivers. *See Harris*, slip op. at 6–7; *Suscy*, 538 F.2d at 1267; *Turner v. Fraternal Order of Police*, 500 A.2d 1005, 1008 (D.C.App.1985). This interest has been expressly stated in the General Order. *Cf. McKenzie*, 833 F.2d at 340–41. Wrightsell, Brown, and Johnson were not randomly tested nor was there no standard for their selection for drug testing. Otherwise, like the other plaintiffs, their claims would not be dismissed at this time. *Cf. Harris*, slip op. at 7; *Taylor*, 669 F.Supp. at 1441. The drug tests of these plaintiffs were part of routine medical examinations, which under the facts alleged, must be assumed to be designed to ensure that police officers returning from extended leaves are fit to perform their jobs. No reason exists to distinguish Johnson's examination because he was returning from a vacation not medical leave. That is a reasonable ground for desiring to test the fitness of a public safety employee. *Harris*, slip op. at 8. Also, since the medical examinations are only conducted under specified circumstances, the likeliness of abuse or harassment is reduced, *id.*, and intrusion is minimized by limiting the mandatory examinations to specific circum-

stances. *McKenzie*, 833 F.2d at 340. Giving a urine sample is part of an ordinary physical examination and, whatever interest in "physiological secrets" in already-discharged urine there may be, *see Von Raab*, 816 F.2d at 175–76; *Feliciano*, 661 F.Supp. at 584, testing for the presence of certain drugs is a minimal intrusion. *Taylor*, 669 F.Supp. at 1441; *Harris*, slip op. at 8; *Turner*, 500 A.2d at 1011 (Nebeker, J., concurring).

Under the facts alleged, the City's interest in public safety, as served by having a fit police department, sufficiently outbalances the minimal interest in already-discharged urine to justify drug screening during routine, employment-related medical examinations. *Harris, supra; Taylor, supra. See also McKenzie, supra.* It is again emphasized that the tested employees are public safety employees; the medical examinations are routine and employment-related; and there is no allegation that the urine samples are obtained in any manner more intrusive than in an ordinary medical examination nor that the testing procedures are unreliable. The claims of Wrightsell, Brown, and Johnson are dismissed.

■ Plaintiffs are bringing both a facial challenge to the Order and a challenge to the City's actual practice. As the discussion of drug testing as part of a routine medical examination necessarily implies, the facial challenge to that portion of the General Order must fail. The tests of Moore and Williams, if conducted pursuant to the General Order, were conducted pursuant to § IV(A)(2). Since § IV(A)(2) requires individualized suspicion, a facial challenge to it must fail. *Cf. Turner*, 500 A.2d at 1008–09. Plaintiffs lack standing to bring a Fourth Amendment facial challenge to any other provision of the General Order, none of which were applied to plaintiffs. *See New York Civil Service Comm'n v. Snead*, 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1976) (per curiam); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7, 102 S.Ct.

1186, 1191 n. 7, 71 L.Ed.2d 362 (1982). *See also Foster v. Center Township of LaPorte County*, 798 F.2d 237, 244–45 (7th Cir.1986). The facial challenge to General Order 85–5 is dismissed. All that remains is the claims of Williams, Evans, and Moore, challenging defendants' drug-testing policies as particularly applied to them.[6]

IT IS THEREFORE ORDERED that:

(1) Defendants' motion to dismiss is granted in part and denied in part.

(2) The facial challenge to General Order 85–5 is dismissed.

(3) The claims of plaintiffs Lance Wrightsell, Andrew Brown, and Forest Johnson are dismissed and these plaintiffs are dismissed from the case.

(4) Plaintiffs' motion to certify as a class action is denied.

(5) Defendants are ordered to answer the claims of Williams, Evans, and Moore within 14 days. The parties are ordered to complete discovery within 90 days.

(6) A status hearing is set for February 2, 1988, at 9:15 a.m.

---

**6.** It is apparent that these three plaintiffs, who only had one section of the General Order applied to them and none of whom are presently working as police officers, are inadequate as class representatives for employees of the Police Department. *See* Fed.R.Civ.P. 23(a)(4). The motion for class certification *is denied.*