Tyrone G. BERRY, Appellant

v.

DISTRICT OF COLUMBIA, et al.

No. 85-6158.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1987.

Decided Nov. 24, 1987.

Melvin A. Marshall, Washington, D.C., for appellant.

Charles L. Reischel, Deputy Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, and Karen S. Dworkin, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

David A. Reiser, Staff Atty., with whom James W. Klein, Chief, Appellate Div., and Henderson Hill, Sp. Litigation Counsel, Washington, D.C., were on the brief, for amicus curiae, Public Defender Service, urging reversal.

Michael W. Farrell, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Washington, D.C., was on the brief, for amicus curiae, U.S., urging affirmance.

Arthur B. Spitzer and Elizabeth Symonds, Washington, D.C., were on the brief for amicus curiae, American Civil Liberties Union Fund of the Nat. Capital Area, et al., urging reversal.

Before MIKVA, EDWARDS and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This action was instituted by Tyrone Berry against the District of Columbia ("District" or "D.C."), Mayor Marion Barry and several unknown police officers after Berry was arrested several times on drug charges in 1984.[1] Berry claimed that, during two of his arrests, he was unlawfully assaulted by several police officers, and that, following one of his arrests, he was denied a speedy presentment before a magistrate. Berry further claimed that, when money seized from him during these arrests was later made subject to civil forfeiture proceedings, notice of these proceedings should have been provided to his criminal defense attorney. In addition, Berry claimed that his constitutional rights were violated when he was ordered to submit to drug testing and treatment as a condition of pretrial release. The District Court granted summary judgment in favor of the District on the notice claim and the drug testing and treatment claim. The assault and presentment claims were dismissed because Berry's attorney failed to abide by the District Court's orders. On the record before us, we reverse and remand in part, and affirm in part.

First, because we find that the District Court failed to consider significant constitutional issues raised by the District's drug testing and treatment program, we reverse and remand on this claim. Second, because we can find no adequate basis on the present record to justify a dismissal of Berry's assault and presentment claims, we reverse and remand for further proceedings on these claims. Finally, we affirm the District Court's grant of summary judgment with respect to Berry's spurious notice claim.

## I. BACKGROUND

On March 6, 1984, Berry was arrested on drug charges. The next day, a D.C. Superior Court Commissioner ("Commissioner") released Berry on his own recognizance on the condition that he submit to an immediate urinalysis drug test. If Berry tested positive, he was then supposed to participate in the drug testing and treatment program administered by the District's Pretrial Services Agency ("PSA"). Apparently, Berry did not submit to a drug test before he was released, and he did not report to the PSA for further tests or treatment.

On June 20, 1984, Berry was again arrested on drug charges. The next day, a Commissioner released him into third-party custody with the same conditions that followed his March arrest. This time Berry did submit to a urinalysis drug test, which was positive for cocaine and opiates. The PSA then instructed Berry to report for weekly drug tests. When Berry failed to report for his scheduled tests, the PSA notified the D.C. Superior Court that he had violated his conditions of release.[2] After a show cause hearing was held on August 14 to determine whether Berry's bail should be revoked, Berry was released with the same conditions that followed his March and June arrests.[3] He did not report for testing, however, and a bench warrant was issued for his arrest on August 24.[4] At a hearing several weeks later, the D.C. Superior Court quashed the warrant and set a $2000 surety bond; Berry was

---

1. Three other plaintiffs named in the complaint have not appealed.

2. See *United States v. Berry*, No. M7441–84 (D.C. Super.Ct. July 17, 1984) (order to show cause why pretrial conditions of release should not be revoked), *reprinted in* Appellees' Appendix ("App.") 4. When Berry moved for partial summary judgment, he claimed that he had not submitted to a drug test after his June arrest. *See* Plaintiff's Statement of Material Facts Not in Dispute at ¶ 13, Record Document ("R.D.")

19. His assertion on this point appears to be in error.

3. See *United States v. Berry*, No. M7441–84 (D.C. Super.Ct. Sept. 28, 1984) (order denying motion to modify conditions of release), *reprinted in* Appellees' App. 6.

4. Two days earlier, Berry had been arrested on new drug charges. He was presented to a Commissioner the next day, and was released to third-party custody.

unable to post bond and was jailed.[5]

On August 29, 1984, Berry filed this action in the United States District Court for the District of Columbia.[6] Besides making several claims relating to his arrests,[7] Berry claimed that the District's drug testing and treatment program violated his rights under the Fourth, Fifth and Eighth Amendments.[8] In a memorandum order dated June 14, 1985, the District Court granted the District's motion for summary judgment with respect to this last claim. *Berry v. District of Columbia*, No. 84–2659, slip op. at 6–7 (D.D.C. June 14, 1985), R.D. 47.[9] The District Court described Berry's arguments as "far-fetched," and stated that his claim did not present issues of "constitutional dimension." *Id.* at 6–7. The court merely noted that drug testing and treatment are reasonable conditions of pretrial release. *Id.*[10] On September 5, 1985, the District Court dismissed Berry's remaining claims because Berry's attorney had failed

to abide by the court's orders regarding the management of the case.[11]

## II. ANALYSIS

### A. Pre–Arraignment Drug Testing

In his brief to this court, Berry argues that *pre-arraignment* drug tests administered to nearly all persons arrested in the District are unconstitutional. *See* Appellant's Brief at 15. Berry did not raise this issue in his amended complaint, however, and the record does not show that he ever submitted to a pre-arraignment drug test. Since Berry failed to raise this claim in the District Court, he may not assert it on appeal. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C.Cir. 1984) ("It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal.").[12] Therefore, we express no opinion on the validity of pre-arraignment tests performed in the District.[13]

---

**5.** *See United States v. Berry*, No. M13191–84 (D.C.Super.Ct. Nov. 26, 1984) (order denying motion to modify conditions of release), *reprinted in* Appellees' App. 7. On October 4, 1984, Berry was permitted to post 10% of the $2000 bond in cash, and was released on the condition that he report for testing and treatment. Berry tested positive for cocaine in each of the four tests he took following his release. On October 23, Berry was arrested yet again on drug charges. He was unable to post $1000 in cash or surety bond and was jailed. Berry was acquitted on the August charges on January 4, 1985. The charges stemming from the March, June and October arrests all were dismissed.

**6.** *United States v. Berry*, No. 84–2659 (D.D.C. filed Aug. 29, 1984). Jurisdiction was predicated on a host of provisions including 42 U.S.C. §§ 1983, 1988 (1982). *See* Complaint, R.D. 1.

**7.** In Count II of the complaint, Berry claimed that he was unlawfully assaulted during the March and August arrests. Berry further claimed that following his August arrest he was denied a speedy presentment to a magistrate, and, in any event, should have been granted citation release by the police. *See* Complaint, Count II, R.D. 1; *see also* Amended Complaint, R.D. 3.

In Count I of the complaint, the plaintiffs purported to represent a class of persons who had been arrested on drug charges, and who had money seized from them that was later made subject to civil forfeiture proceedings. The plaintiffs claimed that these proceedings were unconstitutional because notice of them

was not provided to the attorneys representing the defendants in the criminal prosecutions that followed the arrests. *See* Complaint, Count I, R.D. 1; *see also* Amended Complaint, R.D. 3. Other claims made in Count I have not been appealed.

**8.** *See* Amended Complaint, Count III, R.D. 3.

**9.** Without addressing the merits of class certification, the District Court also granted summary judgment to the District on the plaintiffs' notice claim. *Id.* at 2–5; *see* note 7 *supra*. It pointed out, however, that the plaintiffs had failed to file a motion for class certification within the time limits mandated by the local court rules. *Id.* at 5 n. 2.

**10.** The District Court stated that the statutory provisions governing bail release in the District give Commissioners "broad discretion" in establishing appropriate conditions of pretrial release. *Id.* (citing D.C. CODE ANN. § 23–1321 (1981)).

**11.** *Berry v. District of Columbia*, 107 F.R.D. 663 (D.D.C.1985), R.D. 57; *see* note 7 *supra*.

**12.** *See also United States v. Williams*, 787 F.2d 1182, 1186 n. 7 (7th Cir.1986) (per curiam) (probationer's initial urinalysis may not be challenged for the first time on appeal).

**13.** We also express no opinion on the reliability of the drug tests employed by the PSA. Berry did not present any evidence to the District

## B. *Drug Testing and Treatment as a Condition of Pre–Trial Release*

The District Court concluded that the District's pre-trial drug testing and treatment program ("testing program") does not raise issues of "constitutional dimension." *Berry v. District of Columbia,* No. 84–2659, slip op. at 7 (D.D.C. June 14, 1985), R.D. 47. We disagree. Mandatory urinalysis clearly implicates rights secured under the Fourth Amendment. This court and virtually all others that have ruled upon the constitutionality of compulsory urinalysis have held or assumed that it amounts to a "search" or "seizure" within the meaning of the Fourth Amendment.[14]

We are unable to pass judgment on the testing program, however, because the record with respect to this issue is virtually barren. As this court noted in *National Federation of Federal Employees v. Weinberger,* 818 F.2d 935, 942 (D.C.Cir.1987) ("*NFFE*"), "the absence of a factual record militates against [reaching the constitutional issues], for it is clear that certain of the legal judgments yet to be rendered will hinge on findings of fact yet to be made with respect to the nature and scope of the drug testing program." There is no adequate factual record in this case because the District Court summarily concluded that appellant's claim did not raise issues of constitutional dimension. While the parties and *amici curiae* have attempted to furnish the essential details about the testing program in their submissions to this court, our review is limited to the information that was before the District Court. Because our review of the testing program "would be materially assisted by the development of a factual record and the district court's conclusion thereupon," *Lucas v. Hodges,* 730 F.2d 1493, 1501 (D.C. Cir.), *vacated as moot,* 738 F.2d 1392 (D.C. Cir.1984), we reverse the grant of summary judgment on this claim and remand for a "full exploration" by the District Court. *Wylie v. District of Columbia,* 634 F.2d 1356, 1357 (D.C.Cir.1980) (per curiam) (reversal required when summary judgment based upon incomplete record).[15]

Although we recognize that factual determinations must be made by the District Court, "we can provide some guidance for the task to be tackled on remand." *NFFE,* 818 F.2d at 942. We note at the outset that neither the District nor the United States, as *amicus curiae,* has argued that the drug tests in this case are not "searches" or "seizures." Moreover, as noted above, the great weight of authority holds that compulsory drug tests are "searches" or "seizures" within the meaning of the Fourth Amendment.

The Fourth Amendment inquiry is not at an end, however, with a finding that the pretrial drug tests constitute "searches" or "seizures," for the Fourth Amendment proscribes only *unreasonable* "searches" or "seizures." In determining the standard of reasonableness applicable to a particular type of "search" or "seizure," a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of

Court on this issue, nor did he claim that the PSA's chain of custody procedures were inadequate. On remand, Berry is free to submit additional evidence on these issues. The reliability of the tests and the adequacy of the chain of custody procedures are relevant in determining the strength of the District's interests under the Fourth Amendment.

14. *See, e.g., National Fed'n of Fed. Employees v. Weinberger,* 818 F.2d 935, 942 (D.C.Cir.1987) (civilian employees in the Department of Defense); *McDonell v. Hunter,* 809 F.2d 1302, 1307 (8th Cir.1987) (prison employees); *Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986)(prisoners); *Williams,* 787 F.2d at 1185 (assumed without deciding that urinalysis of probationers amounts to "search" or "seizure"); *Storms v.*

*Coughlin,* 600 F. Supp. 1214, 1218 (S.D.N.Y. 1984) (prisoners). *But cf. Everett v. Napper,* 825 F.2d 341, 345 (11th Cir.1987) (per curiam) ("search" not found when employee was fired after refusing to submit to urinalysis).

15. *See also NFFE,* 818 F.2d at 942 ("Few legal issues in the Fourth Amendment domain are so pure that they do not turn on *any* facts or circumstances peculiar to the case.") (emphasis in original). We reject the assertion made at oral argument by counsel for the District that the constitutionality of the testing program is not properly before us. Berry raised this issue in his amended complaint, and pressed it throughout the litigation. Moreover, the District Court specifically purported to address Berry's constitutional claim.

the governmental interests alleged to justify the intrusion." *O'Connor v. Ortega,* — U.S. ——, 107 S.Ct. 1492, 1499, 94 L.Ed.2d 714 (1987) (plurality opinion) (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)); *see also NFFE,* 818 F.2d at 942.[16]

In the instant case, the District advances the following argument to justify its testing program: there is a positive correlation between drug use and the likelihood that an arrestee released on bail will commit crimes or fail to appear for scheduled court dates; it is therefore necessary to test certain arrestees to determine the likelihood of their using drugs when released on bail; when deemed necessary, a Commissioner may condition release on periodic drug testing and treatment; then, if users fail to comply with their conditions of release, they can be cited for contempt or have their bail revoked for failing to remain drug-free pending trial, thereby reducing the frequency of pretrial criminality or non-appearance. The critical assumption underlying the District's line of reasoning is that there is *in fact* a positive correlation between drug use and pretrial criminality

or non-appearance. While we have no reason to doubt this assertion, there is nothing in the record to support it. On remand, the District must proffer reliable evidence, statistical or otherwise, from which the trial court can reasonably conclude that drug use makes it significantly more likely that an arrestee will commit crimes or fail to appear for scheduled court dates.[17]

Even if a significant, positive correlation is established, the District Court must also determine whether there is a reasonable basis for the apparent assumption that arrestees ordered into the testing program are potential drug users. *See NFFE,* 818 F.2d at 943 (quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 342, 105 S.Ct. 733, 744, 83 L.Ed.2d 720 (1985)). If the trial court finds that drug testing and treatment are only required when there is an individualized determination that an arrestee will use drugs while released pending trial, then the District's testing program will more likely than not be found reasonable. Individualized suspicion should be based on evidence of prior drug use, such as drug-related convictions [18] or self-reported drug use.[19]

**16.** In making this determination in *O'Connor,* the Court distinguished an employer's search of "the offices and desks of [its] employees for legitimate work-related reasons wholly unrelated to illegal conduct," from situations in which "police, and even administrative enforcement personnel, conduct searches for the primary purpose of obtaining evidence for use in criminal or other enforcement proceedings." 107 S.Ct. at 1500. We recognize that *NFFE,* along with most other drug testing cases to date, involved the first of these two settings, and that their Fourth Amendment analyses have thus been shaped by the employment context. By contrast, this case involves a criminal justice setting. The fruits of the "searches" or "seizures" conducted under the testing program can be used—as they were against Berry—to revoke pretrial release and return an arrestee to jail. This criminal context obviously raises questions different from those raised in the employment context.

**17.** We note that, on the record before us, we are unable to determine whether all crimes represent a threat to the safety of the community. If certain crimes do not pose such a threat, then there may be a question whether, under the Fourth Amendment, the District will be able to justify the significant intrusions engendered by the testing program. *Cf. United States v. Salerno,* — U.S. ——, 107 S.Ct. 2095, 2102, 95

L.Ed.2d 697 (1987) (In considering pretrial detention under the Fifth Amendment, the Court noted that "the government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest."). Similarly, we are unable to determine whether, as a statutory matter, all crimes committed while on pretrial release constitute threats to the "safety of ... the community." D.C.Code Ann. § 23–1321(a) (1981). For example, we do not decide whether a drug offense, in itself, establishes such a threat.

**18.** Berry admits that he was once convicted for possessing marijuana. Plaintiff's Statement of Material Facts Not in Dispute at ¶ 2, R.D. 31. We express no opinion on whether the Commissioners can look to pre-arraignment drug test results as a basis for forming an individualized suspicion that particular arrestees will use drugs while released on bail.

**19.** Urinalysis cases decided to date often have turned on whether the Government claimed to have an individualized suspicion of those persons it tested. *See, e.g., American Fed'n of Gov't Employees v. Weinberger,* 651 F. Supp. 726 (S.D. Ga.1986) (mandatory drug testing of civilian police officers by the Department of Defense is unreasonable absent individualized suspicion). *But see, e.g., National Treasury Employees Union*

Different questions will arise if it is found that arrestees are compelled to participate in the testing program even in the *absence* of individualized suspicion of potential drug use. In its brief and at oral argument, the United States, as *amicus curiae,* asserted that an exceptionally large percentage of persons arrested in the District are current drug users who are likely to use drugs while released pending trial. *See* Brief of United States at 7. From this circumstance, and from the additional claim that there is no "less restrictive means [than urinalysis drug testing] by which drug use by arrestees can accurately be detected," *id.* at 29, the United States argues that individualized suspicion is not required. *Id.* We note, however, that "[e]xceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal...." *T.L.O.,* 469 U.S. at 342 n. 8, 105 S.Ct. at 744 n. 8. Moreover, we do not know what the evidence on remand will show about drug use among arrestees. Therefore, we offer no judgment on this point.[20]

Apart from whether the District's testing program is "justified at its inception," the District Court must also find that the testing program is "reasonably related in scope to the circumstances which justified the interference in the first place." *T.L.O.,* 469 U.S. at 341, 105 S.Ct. at 744 (quoting *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). In performing this analysis, the District Court "must consider the scope of the particular intrusion, the manner in which it is conducted ... and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861,

1884, 60 L.Ed.2d 447 (1979). Furthermore, the District Court must consider whether the District has taken adequate steps to prevent unnecessary disclosure of test results. *See Shoemaker v. Handel,* 795 F.2d 1136, 1144 (3d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 577, 93 L.Ed.2d 580 (1986). In short, the District Court must determine whether the testing program is "no more degrading than is reasonably necessary." *Storms v. Coughlin,* 600 F.Supp. 1214, 1222 (S.D.N.Y.1984).[21]

### C. *Notice of Civil Forfeiture Proceedings*

■ In the course of three of Berry's arrests, money was seized from him which was later made subject to successful civil forfeiture proceedings in the D.C. Superior Court. *See* Defendants' Supplemental Answers to Interrogatories at ¶ 11, R.D. 45. Berry claims that he was somehow denied due process under the Fifth Amendment, or his right to counsel under the Sixth Amendment, because notice of these proceedings was not provided to his criminal defense attorney.

This claim is without merit. We have not found any authority which suggests that the attorney for a defendant in a *criminal* case is entitled to receive notice of a separate, *civil* forfeiture proceeding. Due process requires notice "reasonably calculated, under all the circumstances, to apprise *interested parties* of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (emphasis added).[22] Since Berry has not suggested that his attorney has

---

*v. Von Raab,* 816 F.2d 170 (5th Cir.1987) (Customs Service may test officials seeking transfer to certain positions absent any showing of individualized suspicion).

20. We reiterate that this opinion is in no way intended to express a judgment on the constitutionality of pre-arraignment drug tests. This issue is not before us in this case.

21. The parties dispute the basis for the orders that Berry be tested. If the District Court on remand determines that Berry was tested pursuant to the testing program, then his right to recover will turn on the legality of the program;

but if the Commissioners who ordered the testing made an individualized assessment of Berry's situation, without regard to the testing program, then he must show that the testing orders were unreasonable given those facts.

22. Under D.C. Superior Court rules, notice of civil forfeiture proceedings is published once in the Washington Law Reporter, and mailed "to any lienholder of record, to any person who has made written claim to the res to the office of the [D.C.] Corporation Counsel, and to any other person who is known or in the exercise of reasonable diligence should be known to the Corporation Counsel to have a right of claim to

any claim to the money seized, we agree with the District Court that Berry's attorney was not an "interested party" in the forfeiture proceedings who was entitled to notice.[23]  Thus, the District Court's grant of summary judgment to the District on this claim is affirmed.

### D. *Dismissal of the Assault and Presentment Claims*

After Berry's attorney failed to file a pretrial brief by the date specified by the District Court, Berry's remaining assault and presentment claims were dismissed. *Berry v. District of Columbia*, 107 F.R.D. 663 (D.D.C.1985), R.D. 57.  In the order of dismissal, the District Court noted that Berry's attorney had also failed to attend a status conference at the scheduled time, and had failed to file a pleading specifically requested by the court.[24]

As the District virtually concedes in its brief, this court's decision in *Shea v. Donohoe Construction Co.*, 795 F.2d 1071 (D.C. Cir.1986), requires that the order of dismissal be reversed.  In *Shea*, this court held that dismissal for attorney misconduct is warranted only when the misconduct severely prejudices the opposing party, places an intolerable burden on the judicial system, or has been approved in some manner by the attorney's client.  *Id.* at 1074–79. Because there is nothing in the record to suggest that any of the *Shea* criteria were satisfied in this case, Berry's remaining claims should not have been dismissed.  It was incumbent upon the District Court to consider measures less drastic than dismissal.  Accordingly, we reverse the District Court's dismissal of the assault and presentment claims and direct that they be reinstated.

### III. CONCLUSION

For the reasons stated above, we reverse the grant of summary judgment on the drug testing and treatment claim and remand to the District Court for proceedings not inconsistent with this opinion.  Furthermore, we order that Berry's assault and presentment claims be reinstated.  Finally, we affirm the grant of summary judgment with respect to the notice claim.

Because of their significant interest in this litigation and their invaluable assistance in briefing and arguing this appeal, both the United States and the Public Defender Service shall be accorded intervenor status during any further trial or appeal of the claim relating to the testing program.[25]

*So ordered.*

the res." D.C.SUPER.CT.R.CIV.P. 71A–I(b).  Berry does not contend on appeal that the District failed to comply with this rule.

23. Berry has not directed us to any case law which supports his Sixth Amendment claim.  Of course, if Berry received notice of the proceedings, a fact which is not contested on appeal, he was free to inform his attorney.

24. The District Court initially dismissed the entire case after the last two incidents. *Berry v. District of Columbia*, No. 84–2659 (D.D.C. Dec. 14, 1984), R.D. 14.  It later vacated the order of dismissal, and instead imposed a $100 fine on Berry's attorney. *Berry v. District of Columbia*, No. 84–2659 (D.D.C. Jan. 31, 1985), R.D. 17.  We uphold this fine.  A trial court's decisions with respect to the management of its docket are normally entitled to deference; we find nothing in the record to suggest that the District Court abused its discretion when it fined Berry's attorney.

25. We suggest, but do not require, that the District Court sever the assault and presentment claims from the claim relating to the testing program.