CLAY, Circuit Judge,
dissenting.
Neither the record in this case nor the applicable law support the district court’s grant of summary judgment for Defendants on Plaintiffs claims arising under 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964 (“Title VII”), 42 U.S.C. § 2000e-2(a)(l). We should therefore reverse and remand for further proceedings. Because the majority erroneously affirms the judgment of the district court as explained below, I respectfully dissent.[1]
I. Section 1983 Claim
In her claim under 42 U.S.C. § 1983, Plaintiff alleges that Defendant Hooper violated her Fourth Amendment right to be free from unreasonable search and seizure by directing her to undergo drug testing. The district court granted summary judgment for Hooper based on a finding that Plaintiff consented to the drug testing,[2] and that the drug testing was reasonable.
Because Plaintiff is a public employee and submitted to the drug testing at the *501 behest of her employer, the drug testing implicates the Fourth Amendment and must therefore be reasonable to pass constitutional muster. See, e.g., Skinner v. Railway Labor Exec. Ass’n, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Reasonableness in this context is determined by balancing the public interest in such testing with the privacy rights of the individuals subject to the testing. See, e.g., Nat’l Treasury Employees Union v. Von Raab, 489 U.S. 656, 670-71, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); Knox Cnty. Educ. Assoc. v. Knox Cnty. Bd. of Educ., 158 F.3d 361, 373 (6th Cir.1998) (hereinafter “Knox County ”).
The majority in this case holds that the school board’s “one-year random drug testing requirement was reasonable, particularly in light of Palmer’s conviction for misdemeanor marijuana possession.” (Maj. Op. at 498.) The majority contends that “[gjiven [Plaintiffs] marijuana conviction, the Board’s concern that she might report to work under the influence was well-founded,” (id. at 12), and that the drug testing requirement “served as a reasonable means of ensuring her compliance with the Board’s drug-free workplace policy.” (Id. at 13.)
Although the school board may have had a strong interest in requiring drug testing, as the majority appears to argue, the majority abruptly ends its inquiry on that point, resulting in a truncated analysis at odds with prevailing case law. See Von Raab, 489 U.S. at 670-71, 109 S.Ct. 1384; Knox County, 158 F.3d at 371. Contrary to the majority’s apparent view, drug testing of a public school employee, such as Plaintiff, is not per se reasonable under the Fourth Amendment any time the school board has an individualized suspicion of the employee’s off campus drug use. Instead, a court must balance the public interest in drug testing with a second factor, namely the “employee’s privacy rights.” Knox County, 158 F.3d at 379-80; see also Chandler v. Miller, 520 U.S. 305, 314-16, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997). Without adequately considering the weight of Plaintiffs privacy rights, and therefore being unable to properly weigh this countervailing factor against the public interest, the majority has no legal basis to hold that the drug testing is “reasonable.”
To accord appropriate weight to Plaintiffs privacy rights, we must consider: 1) Plaintiffs reasonable expectation of privacy based on the “degree to which the industry in question is regulated,” and 2) the intrusiveness of the drug testing scheme. Knox County, 158 F.3d at 379-80. Because the record is woefully undeveloped as to these issues, and consequently genuine issues of material fact remain as to the reasonableness of the drug testing at issue, the majority errs in affirming the district court’s grant of summary judgment on the basis that the drug testing was reasonable.
First, as to Plaintiffs reasonable expectation of privacy as a school employee, public education is a highly regulated environment, which may diminish a public school employee’s reasonable expectation of privacy. See id. at 379. But the degree to which Plaintiffs reasonable expectation of privacy may have been diminished on account of her employment is unclear. Most notably, the record contains no evidence of an official drug testing policy apart from one reference in school board policies to the existence of an undescribed “testing program.” Additionally, the policies contained in the record regulate only, as the majority concedes, “substance abuse among school employees while on duty.” (Maj. Op. at 498.) Nothing in the policies contained in the record purport to restrict an employee’s, such as Palmer’s, off cam *502 pus marijuana use so long as it remains unconnected with the workplace. (See id. (quoting school board policies, which apply: “while on duty, on school property, or at a school related activity/event”).)
The record is likewise silent regarding the extent to which other similarly situated employees are or have been subjected to drug testing. The record contains no discernible evidence that the school board provided notice to employees that its substance abuse policies applied to private activities unconnected with the workplace. Because the school board relied on Plaintiffs alleged marijuana use outside of the workplace to impose the drug testing requirement on Plaintiff, inquiry into these undeveloped areas is necessary for the proper deposition of this claim.
Second, the record is unilluminating regarding the issue of the intrusiveness of the drug testing; the only information about the drug testing procedures is contained in a diagnostic document that appears to report the results of Plaintiffs drug test.[3] The report is bare and unexplained; it contains the names of eight substances tested for; the results for each substance, with the positive test results indicating verification by “repeat analysis” without additional explanation; and the name of the health center and diagnostic company, Quest Diagnostics, Inc., which appears to be a “DHHS Certificated Laboratory.” The report also makes reference to “GC/MS Reporting Levels,” with attendant levels, but neither the record nor the parties explain the significance of this information.
The information contained in the unexplained report is insufficient to properly consider the intrusiveness of the drug testing. See id. at 380-83, 385. To properly evaluate Plaintiffs claim, further inquiry is necessary into, among other things: 1) the specific procedures and protocols of the drug testing, including the physical intrusiveness of the testing itself, the employee’s physical privacy during the testing, and the qualifications of those performing the testing; 2) the need for the specific tests performed; 3) the minimum threshold to trigger a positive test result; 4) the reliability of the test results, including the existence and nature of any independent review or protections against false positives caused by diagnostic errors or circumstances unrelated to illegal drug use, such as prescribed medication; and 5) the degree to which the test results are maintained in confidence and stored in a secure manner, including whether the results are available to law enforcement or used for law enforcement purposes. Id.; see also Nat’l Fed’n of Fed. Employees-IAM v. Vilsack, 775 F.Supp.2d 91, 103-07 (D.C.Cir.2011). Without more evidence in the record as to the nature and extent of the intrusiveness of the drug testing at issue, summary judgment was not appropriate on the basis that the drug test was reasonable. See Knox County, 158 F.3d at 386 (remanding challenge to public employee alcohol testing because the record was insufficient).
Accordingly, we should vacate the grant of summary judgment for Defendants on this claim, and remand for further factual development and legal briefing prior to the district court considering a motion for summary judgment. See, e.g., Penny v. Kennedy, 915 F.2d 1065, 1068 (6th Cir.1990) (en banc) (remanding Fourth Amendment challenge to city’s drug testing policy, opining: “we are uncertain from the record here whether the ... fourth *503 amendment aspects of the actual carrying out of the search ... have been adequately addressed”).
II. Title VII Claim
Plaintiff claims quid pro quo sexual harassment in violation of Title VII. The majority sets forth the applicable legal standard, and it need not be repeated here. For purposes of this claim, Plaintiff alleges that: 1) her rejection of sexual advances by Cacioppo caused her termination; 2) Hooper aided the sexual harassment by Cacioppo; and 3) that the school board failed to protect Plaintiff.
In affirming the grant of summary judgment for Defendants, the majority concludes that Plaintiff “has not presented any evidence suggesting a causal relationship between the alleged sexual harassment and her discharge months later.” (Maj. Op. at 499.) The majority reasons that Plaintiffs notice of termination “makes perfectly clear that her discharge was premised upon numerous infractions .... ” (Id. at 14-15.) The majority then rejects Plaintiffs argument that Hooper and Cacioppo acted together as without evidentiary support. (Id.)
Although glossed over by the majority, a review of the record makes clear that the district court erred in granting summary judgment on Plaintiffs Title VII claim because Defendants plainly failed to meet their initial burden in moving for summary judgment, and there remain genuine issues of material fact that preclude a grant of summary judgment.
Defendants moved for summary judgment on the sole basis that Plaintiff “neither asserts nor proves” the element of causation, for which Defendants contended that “no evidence” existed. Defendants asserted that Plaintiff was terminated for failing her drug test and otherwise violating the Last Chance Agreement. Although Defendants may satisfy their initial burden under Rule 56 by pointing to the absence of evidentiary support for Palmer’s claim, see Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), Defendants’ failed to meet their initial burden in this case, as explained below, because Defendants failed to address, or even acknowledge the existence of, evidence tending to support Palmer’s claim. See Hunter v. Caliber Sys., Inc., 220 F.3d 702, 726 (6th Cir.2000) (“If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything.”) (internal quotations and citation omitted).
Defendants offered only the following record evidence in support of their motion below: 1) an unexplained, general citation to 52 pages of exhibits; 2) citation to deposition testimony wherein Plaintiff admits to marijuana use during the period in which she was employed, although not while on the job (Defendants did not explain the relevance of this cited testimony to the Title VII claim); 3) citation to deposition testimony wherein Plaintiff purports to admit that she was fired because of her positive drug test (Defendants did not explain the relevance of Plaintiff’s subjective belief about her termination to the Title AHI claim); and 4) citation to deposition testimony wherein Plaintiff admits her inability to produce evidence that Hooper knew about the allegations of sexual harassment.
Neither this record evidence nor Defendants’ arguments below or on appeal adequately address Plaintiffs allegations against each specific Defendant. With regard to Cacioppo, Defendants did not directly address Plaintiffs claim that after she rejected the “unwelcome[d] sexual advances, Cacioppo repeatedly denigrated her work performance, harassed and beleaguered her, and such actions ultimately *504 le[d] to and [were] the proximate cause of Palmer being discharged from her employment of 13 years.” (Am. Compl. ¶ 2; see also Madden v. Chattanooga City Wide Serv. Dep’t, 549 F.3d 666, 677 (6th Cir.2008) (holding that an employer’s decision to terminate the plaintiff based on information supplied by a supervisor satisfies the causation requirement); Wilson v. Stroh Cos., Inc., 952 F.2d 942, 946 (6th Cir.1992) (holding that the “determinative question is whether [the plaintiff] has submitted evidence that [a supervisor’s] ... animus was a cause of the termination.”).)
Hooper’s liability was likewise all but ignored by Defendants. Defendants’ argument to the district court consisted only of the following sentence: “[i]t is altogether unclear why Hooper is a party as there is no evidence that Hooper even knew of Palmer’s allegations against Cacioppo.” (Mot. at 15 (citing to unexplained deposition testimony).) Defendants’ assertion, however, ignored Plaintiffs deposition testimony that she believes Hooper heard about the allegations from another administrator, and that Plaintiff claims to have herself informed Hathorn of the allegations. Moreover, any lack of actual knowledge fails to negate Plaintiffs allegation that Hooper “intentionally, recklessly, or negligently aided” in the sexual harassment. (Am. Compl. ¶ 3 (emphasis added).)
Finally, in moving for summary judgment, Defendants made no reference at all to the issue of the liability of the school board, or otherwise addressed the allegations against the school board contained in the Amended Complaint. (See id. ¶¶ 4-6.)
Accordingly, in the face of unmet allegations that appear to have record support, and the numerous unresolved material factual disputes that appear to remain, we should reverse the grant of summary judgment on this claim.
III. Conclusion
For these reasons, I respectfully dissent from the majority’s disposition of Plaintiffs claims arising under 42 U.S.C. § 1983, and Title VII. Because it is unnecessary to address the viability of Plaintiffs FMLA claim, for the reasons set forth in footnote 1, supra, I decline to join the majority opinion’s discussion of the FMLA issue.

. With respect to Plaintiff’s claim arising under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., Plaintiff did not appeal the district court’s determination that she does not have a "serious medical condition,” a threshold requirement under the FMLA. See Branham v. Gannett Satellite Info. Net., Inc., 619 F.3d 563, 568 (6th Cir.2010). Therefore, the propriety of the entry of summary judgment on Plaintiff's FMLA claim need not be addressed.

. It is unclear whether a public employee may validly consent to an otherwise unreasonable drug testing policy, but the issue was neither briefed by the parties, nor discussed by the district court, and consequently we need not consider the issue for purposes of this appeal. See, e.g., Nat'l Fed’n of Fed. Employees v. Weinberger, 818 F.2d 935, 943 (D.C.Cir.1987) ("[A] search otherwise unreasonable cannot be redeemed by a public employer’s exaction of a ‘consent’ to the search as a condition of employment.”) (citing Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

. Notably, this document was not proffered by Defendants for the purpose of showing the reasonableness of the drug test. Defendants offered the report only as evidence of the reason for Plaintiff’s termination. (Defs.’ Br. at 14-15.)